**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **DAVID C. GEVAS, # B-41175,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14-cv-134-JPG** |
| | ) | |
| **R. SHEARING,** | ) | |
| **WEXFORD HEALTH SOURCES, INC.** | ) | |
| **NURSE BUTLER, RONALD SKIDMORE,** | ) | |
| **MS. MALLEY, ASST. WARDEN BUTLER,** | ) | |
| **and WARDEN HARRINGTON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Stateville Correctional Center ("Stateville"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is serving a life sentence. His claims arose in August and September 2013, while he was temporarily confined at Menard Correctional Center ("Menard") on a writ to appear in this Court for trial of another civil rights case. Plaintiff claims that Defendants refused to supply him with his prescribed medication and denied him access to a doctor over a two-week period.

More specifically, Plaintiff claims that he arrived at Menard on August 21, 2013, and was initially interviewed by Defendant Nurse Butler regarding his prescribed medications (Doc. 1, p. 4). He informed Defendant Nurse Butler that he had prescriptions for Gabapentin for chronic pain in his lower left leg; Ibuprofen for chronic left shoulder pain; Tamsulosin for an enlarged prostate and urination problems; multi-purpose solution for his soft contact lenses; Blink lubricating eye drops to allow him to wear the contact lenses for the required amount of time; a

contact lens storage case; as well as for Depakote, Remeron, and Benadryl (Doc. 1, pp. 4-5).  His Stateville medical records documenting these prescriptions had been sent to Menard.

After Plaintiff was assigned to his Menard cell, Defendant Nurse Butler administered his prescribed Depakote, Remeron, and Benadryl.  Plaintiff questioned Defendant Butler about the remaining medications.  Defendant Nurse Butler responded that when a prisoner is on a temporary transfer, Defendant Medical Director Shearing's policy is to discontinue medications that were prescribed at another prison, in order to save money – particularly with non-formulary prescriptions such as Plaintiff's.  Plaintiff requested to be examined by a Menard doctor, but Defendant Nurse Butler refused.

Between August 21 and September 4, 2013, Plaintiff was not examined by a doctor, and was denied his prescribed Gabapentin, Ibuprofen, Tamsulosin, multi-purpose contact solution, Blink eye drops, and contact lens case.  As a result, he suffered from severe pain in his leg and shoulder; nausea, vomiting, and muscle jerking; had insomnia and woke 3-8 times per night to urinate; urinated on himself; and had headaches and was unable to see because he could not wear his contact lenses (Doc. 1, p. 6).  He asserts that he was denied medications so that Defendant Wexford Health Sources, Inc. ("Wexford") could save money, with a percentage of the money saved going to Defendant Shearing.  Defendant Shearing is employed by Defendant Wexford.

Plaintiff made verbal and written requests to see a doctor for his severe pain, prostate and urination problems, and vision problems.  Defendant Nurse Butler denied these requests.  On August 24, 2013, Defendant Skidmore (a nurse) assessed Plaintiff's leg and shoulder pain, but refused to allow Plaintiff to see a doctor for the remainder of his stay.  Defendant Skidmore also told Plaintiff of Defendant Shearing's practice and policy to discontinue prescribed medications for prisoners on a temporary transfer writ (Doc. 1, p. 8).

From August 22 to August 29, 2013, Plaintiff wrote requests to Defendants Malley (Health Care Unit Administrator), Assistant Warden Butler, and Warden Harrington, asking for his prescribed medication and for access to a doctor.  He filed three emergency grievances over this matter, on August 23, 25, and 29, 2013, directed to Defendants Harrington and Assistant Warden Butler.  He never received a response to any of these missives.  When Plaintiff returned to Stateville, he received all the prescribed medications that he had been denied while at Menard (Doc. 1, p. 11).

Plaintiff asserts that Defendants Malley, Assistant Warden Butler, and Harrington have deliberately refused to enforce the contract with Defendant Wexford for the provision of medical care to Menard inmates, allowing Defendant Wexford to cut costs by delaying and denying care.  Further, Defendant Wexford has been on notice of its improper actions since Plaintiff filed an earlier suit over similar problems, *Gevas v. Wexford*, Case No. 12-c-1297 (N.D. Ill.), but has refused to alter its behavior.  Plaintiff claims Defendant Wexford has denied him medical care in retaliation for filing the earlier suit.

Based on these facts, Plaintiff asserts constitutional claims of deliberate indifference to his medical needs, denial of equal protection, and retaliation.  In addition, he brings state law claims of negligence against Defendants Malley, Assistant Warden Butler, and Harrington, and of medical negligence and medical malpractice, presumably against the Menard medical provider Defendants (Doc. 1, pp. 12-13).  He seeks damages, declaratory, and injunctive relief.

## **Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated the following colorable federal causes of action, which shall receive further review:

**Count 1:**  Defendants Nurse Butler, Skidmore, Malley, Shearing, Assistant Warden Butler, and Harrington were deliberately indifferent to Plaintiff's medical needs when they refused to provide him with previously-prescribed medications and denied him access to a doctor, causing him to suffer pain and physical discomfort, in violation of the Eighth Amendment;

**Count 2:**  Defendants Nurse Butler, Skidmore, Malley, Shearing, Assistant Warden Butler, and Harrington violated Plaintiff's right to equal protection when they refused to provide him with prescription medications because of his status as a prisoner on temporary transfer to Menard from his home institution, in violation of the Fourteenth Amendment;

**Count 3:**  Defendant Wexford Health Sources, Inc., promulgated a policy, practice, and custom of denying prescription medication to inmates on temporary transfer away from their home institution, thus depriving Plaintiff of his necessary medication and causing him pain and physical distress, in violation of the Eighth and Fourteenth Amendments;

**Count 4:**  Defendant Wexford Health Sources, Inc., denied Plaintiff his necessary prescription medications in retaliation for his filing of a previous lawsuit against Wexford, in violation of his First Amendment rights.

At this stage of the litigation, Plaintiff has sufficiently alleged in **Count 1** that the individual Defendants denied treatment despite their knowledge of a serious risk of harm to Plaintiff from several objectively serious medical conditions, for which medications had been previously prescribed.  *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (delaying treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain).  Further, his repeated requests for help directed to Defendants Malley, Assistant Warden Butler, and Harrington suggest that these supervisory Defendants may be liable for "deliberate, reckless indifference" by purposefully ignoring Plaintiff's complaints and the misconduct of their subordinates.  *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (discussing *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (liability may attach if supervisors "know about the conduct and

facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see")).

In order to prevail on the equal protection claim in **Count 2**, Plaintiff must establish that Defendants "'purposefully and intentionally discriminated against him.'"  *Meriwether v. Faulkner*, 821 F.2d 408, 415 n.7 (7th Cir.), *cert. denied*, 484 U.S. 935 (1987) (citing *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)).

> The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action.  A plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation.  Discriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences.  It implies that a decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group.

*Nabozny v. Podlesny*, 92 F.3d 446, 453-54 (7th Cir. 1996) (quoting *Shango*, 681 F.2d at 1104. Plaintiff has claimed that as one of a group of inmates on temporary transfer, he was treated differently from other inmates with regard to the provision of medical care.  Further factual development will be necessary in order to determine whether purposeful discrimination occurred.

Defendant Wexford Health Care Services is a corporation that employs Defendant Shearing, and presumably Defendants Nurse Butler, Skidmore, and Malley, and provides medical care at the prison.  A corporate entity violates an inmate's constitutional rights only when it has a policy that creates conditions that infringe upon an inmate's constitutional rights. *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004); *Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action).  In **Count 3**, Plaintiff has alleged a direct connection between Defendant Wexford's policy (as implemented by Defendant Shearing) to cease providing prescribed drugs to transferred inmates, and the individual Defendants' refusal to give him necessary prescriptions which he had received regularly at Stateville.

It is a civil rights violation to retaliate against an inmate for exercising his First Amendment rights, even if the retaliatory action would not independently violate the Constitution.  *See Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000); *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000) ("a prison official may not retaliate against a prisoner because that prisoner filed a grievance"); *see also Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (retaliation for filing a lawsuit).  Naming the suit and the act of retaliation is all that is necessary to state a claim of improper retaliation.  *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Plaintiff alleges in **Count 4** that Defendant Wexford Health Care Services denied his prescription medication in retaliation against him for filing a previous lawsuit against Wexford. Giving liberal construction to Plaintiff's complaint, this claim survives § 1915A review.

In addition, the following related claims under Illinois state law shall receive further consideration:

**Count 5:**  Defendants Malley, Assistant Warden Butler, and Harrington neglected their duty to respond to Plaintiff's requests to be given his prescription medications and to see a doctor, and this negligence caused him to suffer pain and discomfort for lack of medical care;

**Count 6:**  Defendants Shearing, Nurse Butler, Skidmore, and Malley refused to provide Plaintiff with his prescription medications or an examination by a doctor, constituting medical negligence and/or medical malpractice under Illinois law.

Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), as long as the state claims "derive from a common nucleus of operative fact" with the original federal claims.  *Wisconsin v. Ho-Chunk Nation,* 512 F.3d 921, 936 (7th Cir. 2008).  "A loose factual connection is generally sufficient."  *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.,* 72 F.3d 1294, 1299 (7th Cir. 1995)). This Court has supplemental jurisdiction over the negligence claim in **Count 5** and the medical

negligence/malpractice claims in **Count 6** pursuant to 28 U.S.C. § 1367.  However further requirements apply to **Count 6** in order for those claims to proceed.

**Count 6 – Affidavit Requirement**

Under Illinois law, a Plaintiff "[i]n any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice," must file an affidavit along with the complaint, declaring one of the following: 1) that the affiant has consulted and reviewed the facts of the case with a qualified health professional who has reviewed the claim and made a written report that the claim is reasonable and meritorious (and the written report must be attached to the affidavit); 2) that the affiant was unable to obtain such a consultation before the expiration of the statute of limitations, and affiant has not previously voluntarily dismissed an action based on the same claim (and in this case, the required written report shall be filed within 90 days after the filing of the complaint); or 3) that the plaintiff has made a request for records but the respondent has not complied within 60 days of receipt of the request (and in this case the written report shall be filed within 90 days of receipt of the records).  *See* 735 ILL. COMP. STAT. §5/2-622(a) (as amended by P.A. 90-579, effective May 1, 1998).[1]  A separate affidavit and report shall be filed as to each defendant.  *See* 735 ILL. COMP. STAT. §5/2-622(b).

Failure to file the required affidavit is grounds for dismissal of the claim.  *See* 735 ILL. COMP. STAT. § 5/2-622(g); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000).  However, whether such dismissal should be with or without prejudice is up to the sound discretion of the

---

[1] P.A. 94-677, effective August 25, 2005, which amended 735 ILL. COMP. STAT. §5/2-622(a) and other portions of the Illinois statute governing health care and medical malpractice actions, was held to be unconstitutional in its entirety in *Lebron v. Gottlieb Mem. Hosp.*, 930 N.E.2d 895 (Ill. 2010).  As a result of *Lebron*, the previous version of the statute is now in effect.  *See Hahn v. Walsh*, 686 F. Supp. 2d 829, 832 n.1 (C.D. Ill. 2010).

court.  *Sherrod*, 223 F.3d at 614.  "Illinois courts have held that when a plaintiff fails to attach a certificate and report, then 'a sound exercise of discretion mandates that [the plaintiff] be at least afforded an opportunity to amend her complaint to comply with section 2-622 before her action is dismissed with prejudice.'"  *Id.*; *see also Chapman v. Chandra*, 2007 WL 1655799 *4-5 (S.D. Ill. 2007).

In the instant case, Plaintiff has failed to file the necessary affidavits as to the claims in Count 6 against Defendants Shearing, Nurse Butler, Skidmore and Malley.  Therefore, the claims in Count 6 are subject to dismissal.  Plaintiff shall be allowed 35 days to file the required affidavits.  Should Plaintiff fail to timely file the required affidavits, Count 6 shall be dismissed without prejudice.  *See* FED. R. CIV. P. 41(b).

## Pending Motion

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

## Disposition

As to service of process on Defendants **SHEARING, WEXFORD HEALTH SOURCES, INC., NURSE BUTLER, SKIDMORE, MALLEY, ASSOCIATE WARDEN BUTLER,** and **HARRINGTON,** the Court recognizes that because Plaintiff is incarcerated in a different institution from the location where his claims arose, he may have difficulty effectuating service within the 120 day time limit imposed by Federal Rule of Civil Procedure 4(m).  Plaintiff has not sought or been granted leave to proceed *in forma pauperis* in this action, therefore, the Court will not automatically appoint the United States Marshal to effect service of process upon Defendants.  However, if Plaintiff desires to request the appointment of the United States Marshal to serve process on the Defendants, Plaintiff shall file a motion for service of process at

government expense, within 35 days of the date of entry of this order (**on or before May 14, 2014**).  The Clerk of Court is **DIRECTED** to mail to Plaintiff the Court's Pro Se Litigant Guide, containing forms and instructions for filing said motion.

If Plaintiff does not timely file a motion for service of process at government expense, it shall be Plaintiff's responsibility to have all Defendants served with a summons and copy of the complaint pursuant to Federal Rule of Civil Procedure 4.  Plaintiff is advised that only a non-party may serve a summons.  FED. R. CIV. P. 4(c)(2).

If Plaintiff requests the appointment of the United States Marshal, the Clerk of Court shall prepare a summons and copies of the complaint and this Memorandum and Order for each Defendant, and shall forward the same to the United States Marshal for service.  If Plaintiff does not file a motion for service of process at government expense within 35 days as ordered, the Clerk shall then prepare a summons for each Defendant, and shall forward the summonses and sufficient copies of the complaint and this Memorandum and Order to Plaintiff so that he may have Defendants served.

**IT IS FURTHER ORDERED** that as to the medical negligence/malpractice claims in **COUNT 6** against Defendants **Shearing, Nurse Butler, Skidmore** and **Malley**, Plaintiff shall file the required affidavits pursuant to 735 ILL. COMP. STAT. §5/2-622, within 35 days of the date of entry of this order (see date certain above).  Should Plaintiff fail to timely file the required affidavits, **COUNT 6** shall be dismissed without prejudice.

Plaintiff is **ORDERED** to serve upon Defendants or, if an appearance has been entered by counsel, upon that attorney, a copy of every pleading or other document submitted for consideration by this Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date that a true and correct copy of the document was mailed to each defendant or

defendant's counsel.  Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, if the United States Marshal is appointed to serve process pursuant to a motion by Plaintiff, the employer shall furnish the United States Marshal with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for effecting service of process.  Any documentation of the address shall be retained only by the Marshal.  Address information shall not be maintained in the court file or disclosed by the Marshal.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 9, 2014**

<u>*s/ J. Phil Gilbert*</u>
United States District Judge