IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DAVID C. GEVAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.3:14-cv-134-NJR-DGW |
| | ) | |
| R. SHEARING, WEXFORD HEALTH | ) | |
| SOURCES, INC., NURSE BUTLER, | ) | |
| RONALD SKIDMORE, MS. MALLEY, | ) | |
| ASSISTANT WARDEN BUTLER, and | ) | |
| WARDEN HARRINGTON, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a).  For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment on the Issue of Exhaustion filed on August 22, 2014 (Doc. 50) be **DENIED**, and that the Court adopt the following findings of fact and conclusions of law.

## BACKGROUND

Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983 on February 6, 2014 alleging claims related to a two-week stay at the Menard Correctional Center ("Menard") from August 21, 2013 to September 4, 2013.  Plaintiff alleges that he was denied certain medication and medical treatment by Nurse Jeremy Butler, Dr. Robert Shearing, and Nurse Ronald Skidmore

during his two week stay.  He further alleges that it is the policy of Wexford Health Sources, Inc. ("Wexford") to discriminate against and deny medication to inmates temporarily confined at an institution on a writ to appear in Court in order to save money.  Plaintiff's claims against Wexford also include one for retaliation (Plaintiff filed a previous suit against it).  And, Plaintiff has alleged a deliberate indifference to his medical needs claim against Defendants Malley, the Health Care Unit Administrator, Assistant Warden Butler and Warden Harrington.  Plaintiff is proceeding on 5 Counts (deliberate indifference, equal protection, policy and practice claim, retaliation, and a state law negligence claim) (Doc. 5).

Defendants Nurse Butler, Dr. Shearing, and Wexford have moved to summary judgment on the issue of exhaustion (Doc. 50).  Plaintiff filed a response (Doc. 57), to which Defendants replied (Doc. 59), to which Plaintiff filed a sur-reply (Doc. 61) and an exhibit (Doc. 74).[1]  On October 31, 2014, a hearing was held on the Motion pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) in which Defendants (Nurse Butler, Shearing, and Wexford) appeared by Counsel and Plaintiff appeared by video-conference.

## FINDINGS OF FACT

The undisputed evidence reveals that Plaintiff submitted two grievances, on October 10, 2013 and October 23, 2013, regarding the issues contained in this lawsuit to the Administrative Review Board ("ARB") (Doc. 51-1, pp. 2-5).  The October 10th grievance, which was filed when Plaintiff returned to Stateville Correctional Center ("Stateville"), is a detailed statement of the medications that Plaintiff takes, the conditions for which they are prescribed, that he was denied medication while at Menard, and a complaint that Wexford has in place a policy to discontinue medications prescribed at another facility in order to save money (*Id.* 4-5).  The

---

[1] The Court also has considered the supplement submitted by Plaintiff on September 4, 2014 (Doc. 60).

grievance also indicates that he complained repeatedly to prison officials to no avail.  The October 23, 2013 grievance is a brief account of inadequate pain medication, substituted medications, medications not supplied, and complaints of the medical co-pay he was required to pay (*Id.* 2-3).

The ARB first responded to the grievances on June 13, 2014 (*Id.* 1).  The ARB recommended to the Director of the IDOC (S. A. Godinez) that information, regarding Plaintiff's particular treatment regimen and policies and procedures regarding inmate medication procedures upon temporary transfers pursuant to Court writs, should be acquired from Dr. Shicker, the Agency Medical Director, and Warden Williams, of Stateville (*Id.*).  The Director concurred (*Id.*).  In a subsequent and final response, dated September 18, 2014, the ARB recommended that the grievance be denied based on information provided by Dr. Shicker and Warden Williams (Doc. 74, p. 2).  However, the ARB also recommended that "Warden Butler and Warden Williams are to ensure appropriate staff are adhering to AD 04.03.100 with regard to information and medication provided to an offender for and during a writ" (*Id.*).  The Director similarly concurred (*Id.*).

As indicated above, Plaintiff filed his Complaint on February 6, 2014, four months after filing a grievance with the ARB and before he received either response from the ARB.

Plaintiff testified that while he was housed at Menard, he submitted three emergency grievances, on August 23, 2013, August 25, 2013, and August 29, 2013, regarding his medications.  He claims that he did not receive a response to these emergency grievances.  He has not provided a copy of the grievances.  However, Plaintiff has provided a Cumulative Counseling Summary which indicates that on August 27, 2013, an emergency grievance (dated August 23, 2013), regarding medication, was returned to Plaintiff and deemed not an emergency

(Doc. 57, p. 5).   A notation regarding this grievance also is included in an Emergency Grievance Log for August 2013 (*Id.* 6).   In the two October, 2013 grievances mentioned above, Plaintiff also states that he submitted three emergency grievances, which were ignored, in August 2013.

At the hearing, Plaintiff indicated that the grievances sent to the ARB contained the complaints that were included in the three emergency grievances.   The first emergency grievance concerned his arrival and Nurse Butler.   The second emergency grievance concerned Defendant Skidmore.   And, the third emergency grievance concerned the lack of response to his previous grievances.   The Court finds that Plaintiff did submit three emergency grievances while housed at Menard regarding his medications.   This Court also finds that Plaintiff did not receive responses to these emergency grievances.

## CONCLUSIONS OF LAW

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005).   The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party.   *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).   *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004).   A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving

party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*,182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies. *Id.* 544 F.3d at 742. If a Plaintiff has exhausted his remedies, the

case will proceed on the merits.  If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

Under the procedures set forth in the Illinois Administrative Code ("IAC"), an inmate must first attempt to resolve a complaint informally with his Counselor.  ILL. ADMIN. CODE TIT. 20, § 504.810(a).  If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id*. §504.810(b).  The grievance officer is required to advise the Chief Administrative Officer ("CAO" – usually the Warden) at the facility in writing of the findings on the grievance.  *Id.* § 504.830(d).  The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. *Id.* § 504.830(d). An inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board for a final decision. *Id.*, § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken.  *Id.* §504.840.

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v.*

*Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

Plaintiff filed this lawsuit 4 months after he submitted his grievances to the ARB in October, 2013.  The Illinois Administrative Code provides that the ARB should tender a response "within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances."  IAC § 504.850(f).[2]  Instead of waiting for a response from the ARB, Plaintiff elected to file suit.  These October 2013 grievances directed to the ARB, then, cannot establish that Plaintiff exhausted his administrative remedies prior to filing suit.  Even though the ARB provided a response during the pendency of this matter, Plaintiff's October, 2013 grievances still would not establish exhaustion.  *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).  ("these [exhaustion] rules routinely are enforced . . . by dismissing a suit that begins too soon, even if the plaintiff exhausts his administrative remedies while the litigation is pending").

This leaves the emergency grievances that Plaintiff submitted in August, 2013.  As indicated above, Plaintiff may request that a grievance be handled as an emergency and it will be forwarded to the Warden for review.  IAC §504.840.  The grievance form itself indicates that if the Warden states "No; an emergency is not substantiated," the inmate "should submit this grievance in the normal manner" (Doc. 51-1, p. 2).  However, the regulations do not indicate that

---

[2] This Code section refers to appeals of decisions made by the Warden of an institution where an inmate is housed but also applies to grievances filed directly with the ARB.  *See id.* § 504.870(b).

an inmate must use the regular grievance procedures after receiving such a response from the Warden. *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005)); *see also Glick v. Walker*, 385 Fed.Appx. 579, 583 (7th Cir. 2010)      The regulations do provide, however, that "[i]f, after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision.  IAC § 504.850. As indicated above, this Court finds Plaintiff credible in his statement that he did not receive a response to any of his emergency grievances.  Therefore, Plaintiff was required to do nothing further to exhaust these particular grievances.

Plaintiff is correct in arguing that if the prison fails to respond to grievances, administrative remedies as to those grievances are unavailable.  *Brengettcy*, 423 F.3d 682 ("we refuse to interpret the PLRA so narrowly as to permit prison officials to exploit the exhaustion requirement through indefinite delay in responding to grievances." (internal citations, quotations, and editing marks omitted)).  And, Plaintiff waited over five (5) months after submitting his emergency grievance before filing this lawsuit, a sufficient amount of time.  *See Muhammad v. McAdory*, 214 Fed.Appx. 610, 612-613 (7th Cir. 2007) (indicating that the district court erred in dismissing a case where the inmate filed suit 51 days after not receiving a response to an emergency grievance).[3]

---

[3] Even though the jail failed to either respond, or give their response to Plaintiff, to the emergency grievances, it is clear from the record that the ARB did consider the merits of Plaintiff's claims and rendered a decision *after* he filed this lawsuit.  Plaintiff admitted that the grievances filed with the ARB contained the same information that was located in Plaintiff's emergency grievances.  If the ARB, the body that would have ultimately heard an appeal of the emergency grievances *did in fact* respond to the claims that were made in the emergency grievances, then it is somewhat inconsistent to find that the entire administrative process was unavailable to Plaintiff.  The PLRA states that "[n]o action shall be brought . . . until such administrative remedies as are available are exhausted."  42 U.S.C. §1997e(a).  When Plaintiff

## RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that the Motion for Summary Judgment on the Issue of Exhaustion filed on August 22, 2014 (Doc. 50) be **DENIED** and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto.  The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals.  *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: November 7, 2014**

**DONALD G. WILKERSON**
**United States Magistrate Judge**

.

---

was transferred from Menard to Stateville, the administrative remedy of filing a grievance with the ARB became available and Plaintiff availed himself of that remedy.   The Seventh Circuit has indicated, however, that "[s]ometimes grievances are clearly available; sometimes they are not, and sometimes there is a middle ground where, for example, a prisoner may only be able to file grievances on certain topics."  *Kaba*, 458 F.3d at 685.  This case may be an example of the regular grievance process being available even though the emergency process was not.